I'll call the first case. Byron Bradley for the petition. Counsel, step up to the podium and identify yourself, please. I'm Byron Bradley, B-R-A-D-L-E-Y. I'm the attorney for the defendant and the appellant, Samuel Primbas. Good morning to all of you. Good morning. Your Honor, the instant case is an appeal from a trial in which the defendant was present at a 10-acre home of his mother. While it is in the city of Chicago, it's essentially, I know you've read the briefs in this particular instance, the premises are a 10-acre wetland area as identified by the exhibits. His mother, a widow, lives there alone. And the defendant maintains a garage where he conducts business. He does repairs in addition to his job. As an employee of the city of Chicago, he repairs trucks in a large garage in that section. The defendant during his lifetime lived in the home with his mother. Now that he's in his 40s, he, of course, lives a short distance away. But he's been familiar with that area his entire life. He's frequently in the area because, as I indicated, he repairs vehicles there. He has an interest in being there. What lie in your estimation is the nature of the land of any significance? Because they affect the circumstances under which the defendant observed an animal on his mother's back porch. His mother at that time didn't own a pet. As I indicated, she's widowed. The defendant was unaware that any visitor had arrived at the premises, and there were no cars parked in the driveway. He didn't see the owner of the dog arrive. He had no reason to believe that anyone was visiting there at that time. Yet he looks out at the- Counsel, I'm not sure whether you seem to be making a factual argument as opposed to a legal argument. All right. And I'm not sure whether that reflects your brief. All right. In this particular case, I cited People v. Larson. People v. Larson stood for the proposition that when there was a challenge to the constitutionality or the vagueness of the statute as applied to the defendant Larson, they came out and indicated that the statute intends to prevent the intentional killing or injuring of a companion animal. In the Larson case, it is uncontroverted that Mr. Larson shot his own dog. He knew the dog to be a companion animal. The issue was then whether or not- There was no case of mistaken identity in that case? No. He knew in this particular case that the dog that he took out and shot was the family dog. There was a statute in effect that indicated- Now, let's say in Larson he doesn't testify that it's his dog. Other people testify that it's his dog. So there's no direct evidence of his state of mind that in fact he knew it was his dog. I mean, what if he thought it was someone else's- What if he thought it was a coyote? What if he thought it was something else and he simply didn't know? There's no question that the dog itself was his companion dog, the one that ended up being killed. But why- Was there direct evidence? In the Larson case, yes. There's direct evidence that it was his dog. It's uncontroverted that it was his dog. There's no question that it was his dog. Did he testify that it was his dog that he killed? Yes, I believe- My recollection is that he did. The issue then became was whether or not his method of killing him fell within the limits of the statute. There was an exception in the statute for euthanasia, and his method of killing him, taking him up to the backyard and shooting him three times, didn't fall within the veterinary community's definition of what an acceptable euthanasia was. Now, your argument here is that there was no evidence. My argument here is that all dogs are not covered. The statute doesn't say all dogs may not be harmed by- Are you saying that had a stray animal been in the defendant's mother's yard, that he could have killed that stray dog and not face charges under the cruelty to animal law? Yes, I am saying that. And do you have any authority for that? The statute does not prohibit the killing of all animals or all dogs. It says companion animals. Is a dog a companion animal? It can be, but not all dogs are companion animals. There are certainly huge numbers of stray animals. Do you think the organization supporting animals would think that it's okay to kill a stray dog? That organization managed to kill a number of- I mean, they maintained ponds, and they themselves euthanized dogs all the time. It's not free euthanization, isn't it? I understand, but they are strays, and they kill them by the scores nonetheless. The city of Chicago rounds up strays and kills them in the hundreds of thousands every year. In this particular case, a person with an interest in the land sees what he believes to be a large feral dog on his aged mother's back porch with his head buried in the garbage, and he shoots it in the rear with a pellet gun. If he was so concerned about his mother's well-being, what did he do after he shot it in the derriere? After he shot it in the derriere, he testified that he assumed that the dog left, and when he heard a further commotion, he went out and spoke, and at that time learned that the dog was not a stray. It belonged to his cousin, a person with whom he had had an amicable relationship. He'd gone to her house for parties. He had done work for her at trial. He testified that he had never, since she was his cousin and he'd been to her house, that he'd never seen her with the dog before. He was not aware that it was her dog. He testified that he was unaware at the time of the act that he was unaware that it was her dog. Had he ever seen her dog previously? Had he seen her dog? Yes. But, Your Honor, I would submit that in a case where it's proof beyond a reasonable doubt, not every dog is distinguishable from every other dog, especially in the case where there are breeds of dogs, and they're specifically bred to have certain characteristics, certain color, certain height, certain shape, type of tail, ears up, down, their coloration. One Rottweiler, in this case it turned out to be a Rottweiler, it's indeterminate whether it was a mixed breed or purebred, but a Rottweiler type dog, they're not all the same. And in this particular case, the circumstances as known to the defendant, he is looking from the garage where he does the truck repairs out through a baluster. Weren't Rottweilers very expensive dogs? I'm not sure. But are they, was he accustomed to seeing Rottweilers running wild in that wetland area? I believe the testimony was that they had a Rottweiler that had killed one of the prior pets at the location. That was the testimony of either the defendant or his mother. A companion Rottweiler? No, well, it was a feral dog. It killed one of their pets, and it wasn't itself killed. It ran off to wherever they go after they leave. But it wasn't a wild dog, is that correct?  It left. It's not on a leash. It's not accompanied by an individual. It wasn't claimed by an individual. There's no evidence of any dog tags. A dog that deliberately came upon the property of the defendant and his mother, killed in the past one of their household pets or animals, and left. And you said it wasn't that dog. You said that dog was not on a leash. But there was testimony that this dog was on a leash and had a collar. Yes, and there's also testimony, Your Honor, that the defendant's view of the dog from the rear while the dog's head was buried in the garbage can. What does that mean? That it's a question of fact to be determined by the trier of fact? Yes. It doesn't really make any difference to us which way the trier of fact decides. In terms of review. I understand that in terms of review. But the victim in this particular case did not observe the pellet gun being fired. She didn't see what the defendant did, and she cannot testify as to what the defendant saw. All right? At the time of the occurrence, the only testimony as to what was seen or not seen was by the defendant. And his testimony that he did not see the leash or have reason to believe that it was on a leash or that it was anybody's pet is supported forensically by the pathologist's report that the pellet entered at the rear and traveled a horizontal line into the chest or thorax area. And number two, that he enjoyed a good relationship with his cousin. And the absence of any discordant relationship suggests that it was a mistake. And there was a specific finding by Judge Claps, as I recall, that his testimony was not credible and I believe that extended to the testimony of his mother, as I recall, correct? He says that he was not convinced by their... That is correct. And Judge Claps also said that the statute appeared to be one of those absolute liability statutes. And maybe he was referring to anybody who shoots a dog on a porch and can't confirm that the dog is not leashed or unleashed or cannot confirm that the dog doesn't have a collar. He assumes responsibility for the dog being a companion animal and suffers the consequences. And maybe that's the liability Judge Claps was referring to. I mean, aren't we weighing into the arena of recklessness here? I'm sorry? Recklessness? The state did not argue recklessness and the judge did not make a specific finding of recklessness. The statute does not, as I indicated before, ban the shooting or the injury to all animals. All dogs are not... But the statute does ban the intentional commission of the act. Is that correct? That's the first part of it. And did not your client intentionally shoot the pellet gun? Yes. Now the second part of that, Your Honor, if they meant all dogs, they could say all dogs. They said companion animals, and you have to give meaning to that. Not all dogs are pets. Huge, vast numbers are feral. Wolves are canines. They're a species of dogs. Coyotes are a species of dogs. Dingoes are a species of dogs. Your Honor, or Your Honors, rather, what are the circumstances here? The defendant... You have to view this statute under the circumstances of each individual case. Now, there's no notice that the victim was coming over, that the defendant had any reason to know that the victim was coming over. He didn't see her arrive. There's no car in the driveway. His mom doesn't have any pets, and yet he sees a large, apparently feral dog rooting through the garbage. Now, he doesn't have an unobstructed view. And instead of saying shoo, he shoots it and kills it. I suppose he could, and any citizen could, leave the safety of a building, go out and confront a wild, what he believes to be a wild feral dog, and attempt to shoo it off the porch. Well, you indicated that he was accustomed to being in these wetlands with wild animals scurrying around. But should one approach? Is it reasonable to require, under penalty of conviction of a felony, require an individual to confront a wild animal first, in an attempt to scare it away? But this animal was not wild. It was on a leash. It belonged to his relative. As it turned out, Your Honor, it was on a leash. Did the defendant know that at the time of his act? The circumstances suggest the absence of any malice or bad feelings between him and his cousin, the presence of, you know, a good relationship, suggests that this is a mistake.  Pardon? I don't believe he did, Your Honor. He's on his own land, essentially. He has an interest in there. He maintains a business there. And the circumstances suggest that this is a mistake. Your Honor, if the statute talks about, you know, any companion animal, if your next-door neighbor has a gerbil, and it gets away and ends up in your kitchen, and you whack what appears to be a rodent in your kitchen over the head with a pan and kill it, have you now committed a felony? It's clearly a companion animal. It's clearly in your house, okay, but it's a companion animal, and you intended to whack it over the head with a pan. How? I mean, under these circumstances, when an individual is essentially on his own land and without sufficient or any notice that this thing belongs to anybody, how can a court assume that he knows it is someone's pet? I guess that's what this thing comes down to. Counsel, will you acknowledge that intent is ordinarily derived from the circumstances, not from direct evidence? And we leave it to the prior facts to decide whether or not intent is present. And, Your Honor, under those, if I can get to my section on that, the circumstances of which individual pays would be? I'm talking about the intent of the defendant. You can't prove it directly. You have to prove it circumstantially. Yes. In the event that you prove it circumstantially, Your Honor, a person may be, I'm referring now to the Stanley case that was decided by the state, a person may be guilty of an offense without having one of the prescribed mental states, one, if it's a misdemeanor, two, if the statute clearly indicates a legislative purpose, and it further goes on to cite section 4-9, which addresses the committee comments, addressing the absolute liability, says that the section is intended to establish strict limitations upon the interpretation of a mental state that the mental state is not an element of the offense. And if it's the, there's to be a permitting of an absolute, I'm sorry, liability, in this particular case, if you intentionally act, which is the state's view, if you intend to commit the act and it ends up being a companion animal, you're stuck with a felony. I would suggest, Your Honor, that in fairness, the defendant must be proved to have intended to kill something he knew to be a companion animal. If you're driving down the street and you make a left turn, did you intend to make a left turn? Yes, you did. And having made the left turn, you'll run over the Rin Tin Tin, the family dog. You intended the left turn. The dog, you know, is in the street and you ran him over. Now, he's running wild in the street, but do you know that? I mean, you're subjecting citizens to felony penalties. But the statute, does it require that the defendant have to intend to injure? As I see it, it says intentionally commits an act. It doesn't say intentionally caused a killing or caused an animal to suffer. It says intentionally commits an act and causes a companion animal to suffer. And my objection to this, Your Honor, is that in order for a non-misdemeanor to be statute, be used against a citizen, then there has to be a mental state proven as to each and every element. And the element that I'm suggesting that must have been proven beyond a reasonable doubt is the element of knowledge that he knew or should have known that the animal at issue was someone's pet. Is your argument when we strip everything down to the core one of over-breadth? Yes. I suppose. You gave the example of whacking, what was it, gerbil? Yes. Over the head in the kitchen. You gave the example of making a left-hand turn and running over Rin Tin Tin. I believe in your brief you suggest, or posit the example of two hunters out and one hunter shoots one of the dogs, one of the hunting dogs. Yes. He's shooting at a bird. He inadvertently shoots at the dog. And, you know, he's intended the act. And now under the trial court's version of this, he's off to prison. Why wouldn't that be a decision in the first instance for the General Assembly to have made and not for this review of the court? Well, in the absence, the General Assembly passed this law. The Larson court reviewed the law and said that under the circumstances of the Larson case, they didn't have to reverse the conviction because Mr. Larson knew that it was the family dog. And they went on in Larson's to say that absent an affirmative defense, in this particular case, mistake, he can't just take out the family dog and shoot it three times. But once again, that was a different provision. Right. A euthanasia provision. Under the totality of circumstances here, it's his land. You know, he has no reason to hate. He doesn't hate animals. He's owned animals and pets his whole life. You know, there's no history of him, you know, behaving badly with animals or any criminal conduct whatsoever. I understand that's not the State Department. But in this instance, a person who likes and has owned animals his whole life, they've had, you know, dogs, they've had horses, they've had sheep, they've had turkeys, they've had fowl, goats. Goats, I'm sorry. They're breed, so it's goats. He doesn't hate animals. He doesn't have an axe to grind against animals. And for this court or the trial court to find that out of the blue, he decides one day that he's going to kill something he knows to be somebody's pet, is not supported by the evidence. Forensically, again, the victim in this particular case didn't see the occurrence. She put her dog on the back porch. A large, I think a 9 by 12 back porch surrounded by balusters. There's debris, not debris, but there's, you know, household furnishings. There's a barbecue. There's garbage cans. There's kitchen tables and chairs. And there's balusters with, I believe the photos indicate a spacing of about four to six inches between the balusters. And it's through this, what the defendant and his mother termed was a rainy day, that he sees a large animal with a head buried in the garbage can and shoots it in the rear with a pellet gun. Under those circumstances, Your Honor, I believe the mistake is a far more reasonable conclusion than to believe that he intentionally or willfully killed something he knew to be a pet. All right, counsel. Let's hear your opponent. We'll have some short rebuttals. Thank you. May it please the Court, my name is Joseph Prizer and I represent the people of the state of Illinois. The defendant today offers this court an interpretation of the aggravated cruelty statute that a companion element that requires a companion element be accompanied by an independent mental state. The people disagree, and we disagree that the defendant needed to know that Shelby was a companion animal at the time that he shot her. What is a companion animal? As defined by statute, a companion animal is defined in the statute under 51072.018. It says an animal commonly considered to be or is considered by the owner to be a pet, and that includes but is not limited to canines, felines, and equinines, which are horses. How do you deal with the hypotheticals counsel put forth to separate those cases from this case? Your Honor, I'd first like to respond by saying that the defendant never argues that this was an unconstitutional statute. The hypotheticals that he brings forth are essentially arguing that this is an unconstitutional statute. In People v. E.H., the Supreme Court cautioned appellate courts to decide cases on non-constitutional grounds before they reached the constitutionality of them. Now, in that case... Do we necessarily need to put blinders on in a situation like this? No, I'm not saying that the court can't consider it constitutional. I'm just saying that it wasn't raised by a defendant in this case, and when responding to that argument, that essentially goes to a factual-based conclusion in terms of whether that was a companion animal. And in this case, we have a factual conclusion by the trial court that this was a companion animal. The Rottweiler Shelby was a companion animal. In this case, we have a court that on February 19th listened to closing arguments by the defendant and by the people, and they listened to arguments in terms of how the statute should be interpreted. On February 20th, the court says that there's nothing in his opinion, there was nothing in the statute that required the people to show that the defendant knew this was a companion animal. However, he goes on to say that that doesn't really matter, and he's going to explain why. What follows between pages three and pages seven are over five pages of factual and credibility findings that the judge makes. The judge first comments on defendant's testimony and defendant's theory of defense, which is essentially entirely what defendant today relies on. He relies on creating reasonable doubt by citing what defendant's testimony was and what defendant's mother's testimony was. The court summarizes the testimony and says, defendant argues that the defense was he thought it was a wild animal or coyote, and he was trying to shoo it off the porch. On page six. Let me, if I might interject for just a minute, because I think you've wandered away from Justice Garcia's question, and I think it's a very important one. How do you distinguish your position from the three examples that your opponent gave, the gerbil, Rin Tin Tin, and the situation where you have the two hunters out and the one shoots the bird dog? Well, again, the three different situations. Let's talk about the second one first, the one where we're talking about a car that's driving where they take a left turn. And this was actually brought forth during a closing argument by a defendant. And the judge talks about it. The judge says, well, I don't think that it would be necessarily, and I'm paraphrasing here because I can't remember the exact quote, but the judge says, essentially, I don't think this is necessarily a situation where it wouldn't be a felon, you wouldn't be guilty of aggravated cruelty if you were just turning and hit the companion animal, even if you knew it was a companion animal. But it would be a situation if you aimed the car directly at the companion animal and hit it. Essentially, that's what we have in this case, is we have a person, a defendant, that aimed a pellet gun at a dog. And the evidence actually showed through George's testimony. Again, what we have is we have a judge making credibility findings. And the judge completely discredits both defendant and defendant's mother's testimony. He calls the gerbil in the iron skillet. Looks like there's a rat running loose in the neighbor's house. And with the skillet, he disposes of it. And it ends up being someone's pet gerbil. What about that example? Well, Your Honor, those are, again, that, under the companion animal definition, it would have to be, we'd have to talk about what the companion animal was. Is a gerbil, you said, a pet? That is what the statute defines as a pet, yes. So it could be a parakeet or anything. It is. Or a pet rat. Pardon? Or a pet rat, for that matter. What about Jijo? The law doesn't preclude you from taking steps to protect yourself or to react in a way that you think reflects what you think should be done for your own safety. You can kill a companion pet if that companion pet is about to bite you or attack you. And there's no, and that may be justification. That may be some sort of affirmative defense. But the statute itself doesn't present a problem, does it, to a housewife or anyone in the home killing a gerbil that got in and looks like it's a rat? Certainly not, Your Honor. Necessity would always be a defense in that situation. It would be an absolute defense. However, in this case, we have a situation where there was no necessity. Even if we accept the defendant's testimony, which wasn't accepted by the trial court. Again, on page six, the trial court says, it's the most absurd testimony I've heard in my entire life. It's totally unbelievable. In regards to the defendant's mother's testimony, he says, the only word that comes to mind to describe it is pathetic and that it's totally absurd. The judge completely discredits what the defendant says. But he gives credit to the people's evidence. And the people's evidence came in the form of what Georgia said. He said, there's no reason, and this is on page four of the record, there's no reason in my mind to question the credibility of Georgia. And what Georgia testifies is that she walks Shelby to the defendant's mother's house. When she walks her, she uses a bright orange collar and a blue leash. She gets to the back porch, and she ties Shelby to the back porch using that blue leash. She's inside for between five and seven minutes, and then she hears footsteps on the back porch. Immediately after Georgia hears footsteps, she hears a stomping sound, and she goes out to check on her dog. She opens the door, and she sees the defendant standing at the bottom of the stairs. Contrary to what the defendant testified to, she saw a defendant standing there at the bottom of the stairs. And she looks down, and she sees her dog, Shelby, lying on her side. She watches Shelby die on that porch, and while Shelby dies, she's still tied with the orange collar and the blue leash to the porch. Now, in this case, we have intent, and we know that the defendant knew this was a companion animal. Did the defendant say that he came to the steps after he heard, what was it, yelping or something like that? That's not necessarily what the defendant said. The defendant said after he shot it, he went back to his business, and about 20 minutes later, I believe, he said there was a long passage of motion, as I believe the word was, on the back porch. That he came to the back porch then. He did. So how is that at variance with what Georgia recollects, with him standing at the bottom of the steps? Well, Georgia recollects, once she heard stomping, she's inside for five to seven minutes, so the lapse of time could not have happened. She hears stomping, and she immediately goes to check on her dog. There's no way 20 minutes elapsed. Georgia's testimony essentially puts defendant on the porch or right next to the porch at the time the dog is shot. And that contradicts entirely what defendant's testimony was, which again was disregarded by the court. Here we have a situation where Georgia's testimony puts defendant at the porch at the time the dog is shot while the dog is wearing an orange collar and a blue leash and is tied to the porch. Any reasonable person who sees a Rottweiler of any dog tied to a porch with a blue leash knows that that is a companion animal. Now, moreover, we have testimony from Georgia saying that defendant had seen the dog many times before. We have her testifying that Georgia had walked over to defendant's mother's house on multiple occasions, and on many of those occasions she saw defendant and would walk Shelby over to defendant to say hi. Mr. Preiser, once again I apologize for interrupting your presentation, but would you tell us why in your estimation Stanley is important for our consideration in this context? Why Stanley is important? Correct. Stanley is important in the fact that, and this is different than what I say in my brief, so I apologize that it's contradictory in this way, but Stanley is important in that it is a court that interpreted or at least looked at the evidence that was on the second portion, the B portion of the statute, which is the euthanasia portion. It did analyze what it determined to be the legislature's intention with the A portion of the statute. And what it said was the evil intended to be prevented was the intentional killing or injuring of companion animals. And that's exactly what we have here. We have an intention to seriously injure a companion animal. The testimony puts defendant at the porch or near the porch at the time the dog is shot. Now any time someone is shooting a pellet gun at a dog from a mere few feet away, they know that they're going to seriously injure that dog or at least know that they could seriously injure that dog. And that's exactly what happened in this case. We have a pellet that entered the left side of the dog, a big Rottweiler entered the left side of it and cut all the way across its body, lodging itself in its right kidney. I thought your position was not that the defendant had to have an intent to seriously injure the dog, but simply that he had to intentionally commit the act. Are you changing your positions now? Yes, Your Honor. I am changing my position. So you're saying that he both had the intention to commit the act and he also had to have an intention to seriously injure the companion animal now. That's your position now? Yes, Your Honor. And we have testimony in this case that supports that position. And we have findings by the court which support that position. Again, we have a situation where the court talks about motive. And he says, I'm not sure what the motive was here. This is on page three of his findings on February 20th. Now if the court actually believed that the defendant's motive was simply to shoot the animal off, he would have said that. But by not saying that, by saying I don't understand what the motive is, but that is not important, the judge is saying, look, we're not sure why the defendant did what he did, but what he did essentially was stand a few feet away from a dog and fire a pellet gun at it, to a dog that is tied up to a porch. Now this shows beyond a reasonable doubt that any person that's trying to shoot a dog from that close knows at least they're going to seriously injure that dog and knows the potential. Let me ask you regarding your position. Are you saying now that whatever problem with the language of the statute is, whether it's over breath or unconstitutional under certain circumstances as applied, that none of those problems apply here because the evidence was that the, and the judge found that the defendant knew or certainly should have known that he was shooting at a companion animal, at a dog, at his cousin's dog. The judge could have found that as well. That's 100% correct, Your Honor. And the fact of the matter is the judge heard defendant's interpretation of the statute and tailored his findings a day later to meet that interpretation and convict the defendant essentially on a dual basis, under his hybrid liability, which is the way he read the statute, and also under defendant's interpretation, which required a mental state for each of the elements. So then you and your opponent agree? Agree in how so, Your Honor? You both, that was your opponent's position. It's the same as yours, that there had to be a dual intent, both to kill the dog or seriously injure it, and a dual intent to commit the act. And he's saying that, whereas her part is true, there was an intention to commit the act, that his client had absolutely no intention on hurting the dog. He thought it was a wild animal foraging through his mother's garbage, and he was some distance away and simply was trying to, you know, scare it off. Your Honor, our positions differ in that he is trying, the defendant is trying to provide this court interpretation. It's different with the court, because the court only said, the only required, the only thing that was required was to intend to commit the act. The court, are you speaking about the court in Larson? In this case. Judge Claps, Judge Claps essentially says, he says that at the end, but his findings do not necessarily support what that singular statement at the end of his findings were. His statement, his findings essentially support the idea that under any interpretation that you want to give this, under any interpretation you give it, defendant is proven beyond a reasonable doubt. He was proven beyond a reasonable doubt because his story is completely discredited. And what you're left with is credible testimony from the dog owner. The dog owner puts defendant at the scene of the, at the scene of the, at where the dog was standing on the porch. Defendant's own testimony, admissions to the dog owner and to the dog owner's brother and to his own mother say that he intended to shoot the dog and was embarrassed that he intended to shoot the dog. And moreover, we have the testimony of the dog owner, which again, puts defendant at the, at where the dog was, where he could see a leash, where he could see a blue collar, and also in a situation where he'd seen the dog multiple times before. Defendant, going back to what you said before, the defendant did say, actually he did say that he had seen the dog before. He said he saw it once before. He said he saw it a year ago when the dog was a puppy. The dog when it died was eight years old. His story just did not make any sense. He had seen the dog many times before, and for whatever reason, he decided that he was going to shoot it with a Pelican. And when he decided he was going to shoot it with a Pelican, he knew, or at least should have known, that serious injury was going to come to that dog. And that is sufficient to affirm defendant's conviction in this case. Let me, very quickly, I think I asked you about Stanley, and I think you might have heard Larson. Stanley, I'm sorry. All right, with Stanley, and we're talking about the... Why is that helpful to us in your estimation? I'm sorry, I did hear Larson. Stanley is extremely helpful. It comes from this district. It comes from a different division. In that case, we're dealing with defacement of a firearm statute. The court there, the defendant essentially says that there was no proof that he acknowledged that the firearm was defaced. That's what his argument was. His second portion of the argument was a constitutionality attack on the statute, which, again, we don't have in this case. The Fifth Division read the plain language of the statute and said it could arguably be read to require proof the defendant knew the nature of the defaced firearm. But it said in this case, in that case, that's not the case. It said even though the fact that there's a defacement of the firearm unmistakably bears on the commission of the offense, it does not need to be accompanied by an independent mental state. And this is a similar thing.  offense. There has to be a finding that this was a companion animal. But, again, we don't need an independent mental state to accompany that. And that's how Stanley supports our case. And, again, if there are no further questions, for those reasons and those contained in our brief, we ask you to affirm the defendant's conviction. Thank you. Thank you, counsel. Brief rebuttal. Your Honor, I'll address the last issue of the Stanley case. The Stanley court found on, I think, my page six, in the present case, the officer observed the defendant carrying the gun. And it goes on to say, in this case, the Stanley case,  that convinces us of the correctness of drawing a guilty inference as to the defendant's knowledge of one, the weapon, and its unlawful character. In the Stanley case, the defendant was observed with a shotgun. He was observed with an object. Now, he wasn't sitting there holding the object, you know, waiting for the police to come and get him. On seeing the police, he hid the object. We're familiar with the case. Okay. Came back and got it. And based on the circumstances, they concluded that the defendant in the Stanley case knew both. One, that he possessed the weapon. That's the knowing possession of an object with sufficient time to dispossess yourself of it. And, number two, the unlawful character of the object being held. The Stanley decision does not help the state even a tiny bit in this particular case. It does, however, cite the statutory provisions that only a clearly indicated legislative attempt to create absolute liability should be recognized. And in terms of the final effect, I'm referring to page, let's see, 14 of the record, the court, the trial court in this particular case, agreed with the state. I read the statute to mean you intend the act that causes the harm. That if you intend the act, you're stuck with the consequences of that act. And I would submit that's what he said, that under the circumstances. Isn't it analogous that in this instance the judge said that the character of the animal that was shot on the porch is sufficient to infer that it was a companion animal by virtue of testimony that it was on a leash with a collar, regardless of whether this guy, the defendant, says he didn't see any of those things. That's enough for the judge to find the character of the animal that was killed to be a companion animal. And you will decide whether it was reasonable for him to do so. And we will. We can assure you, we will decide. Under those circumstances, Your Honor, the victim didn't see, you know, she left, when she left. You need to wrap it up. When she left, that ended it for her. She left, the dog was alive. She came back, the dog was injured. And it was still on a collar, still leashed with a collar. It still had a leash on it. I don't believe the testimony was that it was still attached to the porch. She did not, however, see the defendant with a gun or with a pellet gun. He's standing at the bottom of the porch. Well, if, as the prosecution would have you believe, that he'd waxed up to the thing, waxed up with a pellet gun, then he would still be standing there with the pellet gun when she came out. Under the facts and circumstances here, it's more consistent with a mistake. The defendant wasn't under the gun. He called his cousin up. He confessed, listen, I'm sorry, I shot your dog. It was a mistake. And then he took substantial steps to try and make it better. If this had been a malicious act, would he have done any of those things? The facts and circumstances suggest a mistake in this particular case. Thank you. Thank you, counsel. Thank you both. This matter will be taken under advisement.